PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**January 26, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>DANIEL ROBERT PROWS and KRISTY DAWN PROWS,<br><br>          Debtors. | Case No. 05-53919 |
| DEMILEC (USA), LLC.,<br><br>          Plaintiff,<br><br>   v.<br><br>DANIEL ROBERT PROWS and KRISTY DAWN PROWS,<br><br>          Defendants. | Adversary No. 06-4115<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

THIS MATTER came on for trial on January 10, 2007. In accordance with its adversary complaint, Demilec (USA), LLC. (Plaintiff), seeks to have the bankruptcy discharge of Daniel Robert and Kristy Dawn Prows (Defendants) denied pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4)(A), and (a)(5)(A).[1] Based on the evidence, testimony and arguments presented at trial,

---

[1] The Plaintiff appears to have incorrectly cited to 11 U.S.C. § 727(a)(5)(A) in its complaint; the proper citation is § 727(a)(5).

MEMORANDUM DECISION - 1

and considering the pleadings and exhibits submitted, the Court's findings of fact and conclusions of law are as follows:

**FINDINGS OF FACT**

Prior to the filing of their bankruptcy, the Defendants owned the majority of stock in and operated KD Companies, Inc. (KD). KD appeared to have operated primarily as a holding company for the stock of PolyFoam Solutions, Inc. (PolyFoam), although the evidence is unclear as to whether KD owned all or a portion of the stock. PolyFoam commenced business in June, 2003, and was engaged in the installation of polyurethane foam insulation. From the time of its incorporation through the summer of 2005, the Defendants personally contributed substantial money to PolyFoam, either as additional contributions to capital or as personal loans. In order to fund the contributions/loans made to PolyFoam, the Defendants sold rental property and liquidated their retirement accounts. The Defendants also sold their residence within a few months of filing bankruptcy, contributed the net proceeds to PolyFoam and relocated to their parents' home. By July, 2005, it was clear that PolyFoam could not survive as an independent entity and the Defendants began a liquidation of the business.

On August 1, 2005, Daniel Prows (Defendant) completed an Application for Employment, Employment Agreement and several other employment documents with Integrated Energy Systems, Inc. (Integrated). The documents indicated that he was to be employed as the General Manager of Integrated effective August 1, 2005, earning a base salary of $42,000 per year. Integrated was engaged in the business of buying, selling and marketing energy efficient systems for residential and commercial construction projects. Integrated had been incorporated on July 13, 2005, and was owned by the Defendant's father, Robert Prows. Robert Prows served as President and the Defendant served as Secretary of

MEMORANDUM DECISION - 2

Integrated. A preponderance of the evidence indicates that the Defendant worked intermittently for Integrated since becoming employed on August 1, performing minor management duties, such as training foam sprayers and assisting in the organization of the company. While winding up the affairs of PolyFoam and KD, the Defendant was also working full-time as a construction manager for Salmon Creek Commons, Ltd.

On October 5, 2005, equipment, furnishings and miscellaneous personal property was sold by PolyFoam to Integrated for the purchase price of $18,000. A postpetition appraisal indicated that the goods were sold at fair market value. The Defendants also either surrendered or transferred the remaining vehicles of PolyFoam in exchange for the then existing debt. Within a few months of the filing of the Defendants' bankruptcy, PolyFoam still had in excess of $150,000 in receivables, but the Defendant testified that all collectable receivables were used by PolyFoam to pay down its outstanding debt. As the Defendants had guaranteed some of the PolyFoam debt that remained unpaid, including the debt owed Plaintiff, they filed a voluntary Chapter 7 bankruptcy petition and schedules (Petition) on October 16, 2005.

Plaintiff first asserts that in the Petition the Defendants did not disclose either the Defendant's employment or income from Integrated. It is also alleged that the Defendants gave away to friends and relatives, but failed to disclose in their Petition, personal property and furnishings. The Plaintiff also asserts that the Defendants failed to list their residence that was sold within one year of the filing of bankruptcy. In Schedule J to the Petition, the Defendants indicated that they paid $2,100 in rent, $120 in electricity and heating fuel, $75 in water and sewer, $75 in telephone, and $30 in garbage and recycling charges, but did not

MEMORANDUM DECISION - 3

disclose that they were residing with the Defendant's parents at the time and were not paying any of these monthly expenses.

Plaintiff also asserts that the relationship and income received from PolyFoam was not disclosed. Plaintiff alleges that it is not possible to tell from the Petition what happened to many of the assets of PolyFoam, particularly the accounts receivable. A transfer from PolyFoam to Integrated of a 2004 GMC, with equipment (Super Rig #2), was alleged to have been transferred to Integrated without adequate consideration, and it is further alleged that the Defendants failed to report a transfer of $3,452.03 to PolyFoam made approximately 30 days before they filed bankruptcy. These funds were subsequently used to repay a PolyFoam employee, who had earlier expended funds to pay a PolyFoam debt. During the period from September 7, 2004, through August 13, 2005, the Defendants received in excess of $91,000 from PolyFoam that they labeled "reimbursements" that were presumably payments on loans given to PolyFoam. The Plaintiff argues that these amounts were salary and should have been referenced in the Petition.

## CONCLUSIONS OF LAW

<u>11 U.S.C. § 727(a)(2)(A)</u>

11 U.S.C. § 727(a)(2)(A) generally provides that a court shall grant the debtor a discharge, unless the debtor, with the requisite fraudulent intent has permitted to be or actually transferred, removed, destroyed, mutilated, or concealed, his or her property, within one year before the date of the filing of the bankruptcy petition. Accordingly, an objection to discharge under this section requires, within one year of filing the petition, (1) a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the transfer or concealment. There must be a finding of actual intent to

MEMORANDUM DECISION - 4

Case 06-04115-PBS    Doc 16    Filed 01/26/07    Ent. 01/26/07 14:06:00    Pg. 4 of 9

hinder, delay or defraud creditors, as constructive intent is not sufficient. However, intent "'may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'" Consumers Oil Co. v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986) (quoting Bank of Sheridan, Mont. v. Devers (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985)). Section 727 is to be construed liberally in favor of debtors and strictly against the creditor. Adeeb, 787 F.2d at 1342.

In the instant case, it is alleged that the following transfers fall within the meaning of 11 U.S.C. § 727(a)(2)(A): (1) PolyFoam personal property and equipment to Integrated for the purchase price of $18,000; (2) miscellaneous furnishings to friends and relatives made at the time of the Defendants' relocation into the their parents' home; (3) $3,452.03 to Polyfoam; (4) transfer of the Super Rig #2 for less than adequate consideration; and (5) concealment of PolyFoam receivables.

A preponderance of the evidence indicates that the sale of personal property and equipment from PolyFoam to Integrated was at fair market value, and the transfer of a de minimis amount of personal property had no real value and was given in exchange for the assistance of friends/relatives in the relocation from the Defendants' recently sold residence to the basement of the their parent's home. There was no evidence presented that a transfer of title to the Super Rig #2 was completed, as the only testimony indicated that PolyFoam was still on title to the vehicle and presumably this asset could be seized by PolyFoam creditors. The transfer of $3,452.03 approximately 30 days before the filing of the Petition, although clearly preferential, by itself does not support a denial of the discharge under this statute. The Court finds credible the Defendant's testimony that his only intention was to reimburse a PolyFoam employee for personal funds the employee had expended to pay an outstanding

MEMORANDUM DECISION - 5

PolyFoam debt. Lastly, the Plaintiff did not establish by a preponderance of the evidence that PolyFoam receivables were used for any other purpose than the payment of PolyFoam debt. In each of these above instances, the Court has been presented with insufficient evidence that the Defendants had the requisite intent to defraud or deceive creditors at the time of the transfer. Accordingly, a violation of 11 U.S.C. § 727(a)(2)(A) has not been established.

### 11 U.S.C. § 727(a)(4)(A)

11 U.S.C. § 727(a)(4)(A) provides that a court should grant a discharge to a debtor, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. For purposes of this section, proof that the debtor merely omitted information from bankruptcy schedules is not sufficient to establish fraudulent intent on debtor's part. La Brioche, Inc. v. Ishkhanian (In re Ishkhanian), 210 B.R. 944, 956 (Bankr. E.D. Pa. 1997). To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. Thomas v. Aubrey (In re Aubrey), 111 B.R. 268, 274 (9th Cir. BAP 1990). "[O]nce it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quoting In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974)).

As with 11 U.S.C. § 727(a)(2)(A), intent may be inferred from the actions of the debtor. A party objecting to a debtor's discharge on false oath grounds must establish "that the information was omitted for the specific purpose of perpetrating a fraud and not simply because [a] debtor was careless or failed to fully understand his attorney's instructions." Estate of Perlbinder v. Dubrowsky (In re Dubrowsky), 244 B.R. 560, 571-72 (E.D. N.Y. 2000). While some courts have found the requisite intent where there has been a pattern of falsity or

from a reckless indifference to the truth, the ultimate question is still whether fraud has been established. Tully, 818 F.2d at 112.

"A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999) (citing In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984))

Initially, the Defendant omitted from his Statement of Affairs both his employment and earnings from Integrated. The evidence is clear that he earned compensation (in excess of $11,000 through December 31, 2005) from Integrated as an Integrated employee prior to, during and after the filing of his Petition. The Court does not find credible the Defendant's testimony that such amounts were not wages, but reimbursements or payroll advancements. Exhibits such as the Defendant's W-2 establish that he was receiving compensation that should have been reported in his Petition. Neither his earnings nor the Integrated employment was scheduled. These omissions are material as they concern the Defendant's business relationship and possibly could lead to the discovery of additional or dissipated assets.

The Defendants fraudulently listed rent and utility expenses in Schedule J, that both of them must have been aware were not paid. The listing of such amounts is both substantial and material, and the Defendant's explanation that these amounts were listed because he intended to reimburse his parents lacks proof and is not credible. Schedule I and J figures are important to a U.S. Trustee's determination of substantial abuse under 11 U.S.C. § 707(b),

MEMORANDUM DECISION - 7

and raise questions as to where the Defendants spent their income if not for these expenses. This could possibly lead to the discovery of further estate assets.

The failure to list on their Petition the transfers of a de minimis amount of personal property to friends/relatives for no consideration, the failure to list $3,452.03 as a preferential transfer, or the sale of the Defendants' residence within one year of filing bankruptcy, alone, are not actionable under 11 U.S.C. § 727(a)(4)(A). This is particularly true with regard to the sale of the Defendants' residence, because the Defendants' attorney was admittedly aware of the sale. The Defendants, and not their attorney, have the ultimate responsibility to ensure that all of the information is correctly disclosed on their bankruptcy petition and schedules, and these omissions, when considered together, lend credence to the Court's conclusion that the Defendants exhibited a pattern of nondisclosure that was either fraudulent or indicative of a careless disregard of the truth in completing their Petition. The Plaintiff is found by a preponderance of the evidence to have established that the Defendants knowingly and fraudulently omitted material information from their bankruptcy Petition.

### 11 U.S.C. § 727(a)(5)

11 U.S.C. § 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." "Section 727(a)(5) is broadly drawn and clearly gives a court power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." First Federated Life Ins. Co. v. Martin (In re Martin), 698 F.2d 883, 886 (7th Cir.1983) (citing Baum v. Earl Millikin, Inc., 359 F.2d 811 (7th Cir. 1966)). "While the burden of persuasion rests at all times on the creditor objecting to the discharge, it

MEMORANDUM DECISION - 8

is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case." First Tex. Sav. Ass'n v. Reed (In re Reed), 700 F.2d 986, 992 (5th Cir.1983). "A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge under section 727(a)(5)." Devers, 759 F.2d at 754. Constructive intent is not enough. However, intent "'may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'" Adeeb, 787 F.2d at 1343 (quoting Devers, 759 F.2d at 753-54).

In the instant case, there is not a preponderance of the evidence that would establish that the Defendants failed to account for any valuable personal assets. It could be argued that the Defendants did not adequately explain the liquidation or distribution of the assets of PolyFoam or KD; however, the Plaintiff was unable to establish with particularity that any of the corporate assets were not accounted for or should have been disclosed in the Petition. This is particularly true as the bankruptcy filing was personal and not corporate. No evidence was admitted by either party that established the existence of corporate assets that were transferred improperly. The Plaintiff is not found by a preponderance of the evidence to have established that the Defendants were in violation of 11 U.S.C. § 727(a)(5).

DATED: January 26, 2007

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge